**In re SUGAR INDUSTRY ANTITRUST LITIGATION (EAST COAST).**

*Borden, Inc. v. Universal Industries, Inc.,* N.D. Mississippi, C.A. No. EC 78–204–K–O.

**No. 201A.**

Judicial Panel on Multidistrict Litigation.

May 30, 1979.

Before MURRAY I. GURFEIN *, Chairman, and EDWIN A. ROBSON, STANLEY A. WEIGEL *, ANDREW A. CAFFREY, ROY W. HARPER and CHARLES R. WEINER, Judges of the Panel.

* Judges Gurfein and Weigel took no part in the decision of this matter.

1. In mid-1978, the Panel entered orders assigning these litigations jointly to Judges Boldt and Cahn. On April 30, 1979, however, Judge Boldt, after more than 25 years of distinguished service to the federal judiciary, retired. Thus

## OPINION AND ORDER

PER CURIAM.

On January 17, 1977, the Panel issued an opinion and order that maintained bifurcated pretrial proceedings in this litigation: MDL–201 before the Honorable George H. Boldt in the Northern District of California, and MDL–201A before the Honorable Edward N. Cahn in the Eastern District of Pennsylvania. *In re Sugar Industry Antitrust Litigation,* 427 F.Supp. 1018 (Jud.Pan. Mult.Lit.1977).[1]

Most of the actions in MDL–201 were commenced after the Government had filed two indictments and three civil injunctive actions in the Northern District of California in late 1974. The complaints in the actions in MDL–201 basically allege that various defendants and others conspired from as early as 1949 until the mid-1970's, in violation of Section 1 of the Sherman Act, to fix the price of refined cane and/or beet sugar in the California-Arizona, Intermountain-Northwest and Chicago-West markets. Several actions in which a national conspiracy is alleged are also included in MDL–201. *Id.* at 1022, 1025–26. Most of the actions in MDL–201 have been settled and dismissed.

The allegations of the complaints in the actions in MDL–201A, which focus on alleged price fixing in the Eastern United States, are much more limited than those in MDL–201. Plaintiffs in MDL–201A basically allege that during the period from October 2, 1972, until at least the end of 1974, numerous defendants and others conspired, in violation of Section 1 of the Sherman Act, to fix the price of refined industrial and grocery sugar in the Eastern United States.[2] Most of the actions in MDL–

both MDL–201 and MDL–201A presently are pending solely before Judge Cahn.

2. The complaints in MDL–201A, as modified by plaintiffs' recent pretrial statements filed pursuant to court order, in large part track the allegations of an indictment handed down on March 30, 1977, by a federal grand jury in the Eastern District of New York. This indictment

201A were, until recently, scheduled to go to trial on June 6, 1979. Because of a number of settlements in MDL–201A, however, that trial date has been vacated, and no firm trial date has been established for any of the actions in MDL–201A.

The above-captioned action (the Mississippi action) was commenced in late 1978 by Borden, Inc., which is named as a defendant in many of the actions in MDL–201A [3] and in some of the national conspiracy actions in MDL–201, against Universal Industries Corporation (Universal). Borden alleges that, in late 1974 and early 1975, a division of Borden agreed in two separate contracts to sell a specified amount of refined sugar to a division of Universal. Borden alleges that the price of sugar steadily declined after the execution of these contracts, and that Universal refused to take delivery of most of the sugar. Borden seeks damages for Universal's alleged breach of the two contracts.

In early 1979, Universal filed three counterclaims against Borden in the Mississippi action. The first two counterclaims are brought pursuant to the antitrust laws of the State of Mississippi. In the first counterclaim, Universal alleges that, in late 1978, Borden proposed and Universal accepted a settlement of the disputes between those two parties arising out of the 1974 and 1975 contracts involved in Borden's complaint. Pursuant to this settlement, Universal allegedly agreed to purchase sugar from Borden at a higher price "than would be paid under normal market conditions." Universal purchased some sugar under this agreement, but has declined to take delivery of all sugar provided for under the settlement. Universal's first counterclaim charges that the settlement was initiated as the result of a conspiracy between Borden and "one or more persons presently unknown," and that as a result of this conspiracy "consumers of [soft drinks including syrup] manufactured by [Universal] would not be given the benefit of the lowest price that they could have received had the conspiracy not been carried out." Universal has brought its first counterclaim as a class action on behalf of all consumers of soft drinks within the State of Mississippi. Universal has not restricted this purported class to any specific time period.

In the second counterclaim, Universal alleges that Borden and thirteen named co-conspirators [4] conspired, between 1972 and 1975, to fix the price of refined sugar and sugar-containing products sold within the State of Mississippi. The allegations of this counterclaim are very similar to those of plaintiffs in MDL–201A, and the counterclaim itself includes references to one of the pretrial statements filed by a defendant in MDL–201A. Universal has brought this counterclaim on behalf of a class composed of all purchasers "of sugar or of products containing sugar, either directly or indirectly, from 1972 to 1975."

Universal's third counterclaim was commenced under Sections 1 and 2 of the Sherman Act. Universal alleges that Borden

charged that four companies had conspired, in violation of Section 1 of the Sherman Act, to fix the price of cane sugar sold for industrial purposes. According to the indictment, the alleged price fixing began in August 1972, shortly after Amstar Corporation announced a new pricing policy that eliminated discounts and provided that all sales of refined industrial sugar were to be made at list prices. The indictment alleged that the four defendants— SuCrest Corp; PepsiCo, Inc; RSN Projects, Inc.; and CPC International, Inc.—discussed Amstar's policy with each other and agreed to initiate similar policies in a fifteen state area in the East. This unlawful conduct continued until September 1973, the indictment alleged. On May 19, 1977, the four defendants pleaded no contest to these charges. See *In re Sugar In-*

*dustry Antitrust Litigation (East Coast),* 437 F.Supp. 1204, 1205 (Jud.Pan.Mult.Lit.1977).

3. Borden is one of the two defendants in MDL–201A that have not entered into settlements with at least some of the MDL–201A plaintiffs.

4. Included among these thirteen co-conspirators are: 1) seven corporations that have been named as defendants in the pretrial statement filed by the industrial user plaintiffs in MDL–201A; 2) four corporations that these MDL–201A plaintiffs have named as co-conspirators; and 3) two corporations named as defendants in many of the actions in MDL–201, but which have not been implicated by plaintiffs in MDL–201A.

and the co-conspirators named in Universal's second counterclaim conspired to fix and raise the price of refined sugar and that these parties attempted to and did monopolize the sale of refined sugar. Universal's third counterclaim does not specify the geographic area within which these activities allegedly took place. Like Universal's second counterclaim, the factual allegations of Universal's third counterclaim are very similar to those made by plaintiffs in MDL–201A. Universal does not seek to represent any class in its third counterclaim.

Little or no discovery or other pretrial proceedings have yet taken place in the Mississippi action.[5]

■ Because the Mississippi action appeared to share questions of fact with the actions in MDL–201A, the Panel issued an order to show cause why that action should not be transferred, pursuant to 28 U.S.C. § 1407, to the Eastern District of Pennsylvania for inclusion in the centralized pretrial proceedings in MDL–201A. *See* Rule 10(b), R.P.J.P.M.L., 78 F.R.D. 561, 568 (1978). Universal favors transfer. Borden opposes transfer. In the alternative, however, Borden moves the Panel to transfer only Universal's third counterclaim to the Eastern District of Pennsylvania. We find that the Mississippi action raises questions of fact common to the actions in MDL–201A and that transfer of the Mississippi action to the Eastern District of Pennsylvania pursuant to Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Borden argues that inclusion of the Mississippi action in the centralized pretrial proceedings in MDL–201A would introduce a variety of novel claims, theories and factual allegations into an already complex litigation. Borden's complaint and Universal's first counterclaim share no factual questions with the actions in MDL–201A, Borden contends. Even Universal's second and third counterclaims, which Borden acknowledges raise some of the same factual questions raised by the complaints in MDL–201A, would complicate and confuse the final stages of pretrial proceedings in MDL–201A by injecting, *inter alia,* the Mississippi state law claims and the allegations that Borden and numerous other entities violated Section 2 of the Sherman Act, Borden maintains. Should there be any possibility that discovery in the Mississippi action would duplicate discovery already taken in MDL–201A, Borden argues, Borden and Universal could cooperate in order to obviate the problem, or the judge in the Mississippi action could issue an order to show cause why prior relevant discovery in MDL–201A should not be made available in the Mississippi action.

Borden contends that transfer of the Mississippi action would result in inconvenience to the parties and witnesses in that action. Borden asserts that Universal is a Mississippi corporation, and that Universal has its principal place of business, and presumably many of its relevant documents, in Mississippi. In addition, the division of Borden which sold sugar to Universal is located in

**5.** I. Walton Bader, one of Universal's attorneys in the Mississippi action, also represents plaintiffs in some of the actions in MDL–201A. One of these actions, *London Dry, Ltd., etc. v. Amstar Corporation, et al.,* which was recently transferred by the Panel to the Eastern District of Pennsylvania from the District of South Carolina, was commenced by a member of the plaintiffs' industrial user class certified by Judge Cahn. This action was filed after this class member had received notice of Judge Cahn's class certification decision in MDL–201A, and after this class member had failed timely to opt-out of the industrial user class. London Dry, Bader, Bader's co-counsel in *London Dry* and numerous MDL–201A defendants have agreed to, and Judge Cahn has entered, a permanent injunction that, *inter alia,* prohibits Bader from "instituting or proceeding further in any manner with regard to any purported claim with regard to the alleged price fixing of refined sugar which is based upon the factual allegations made in the MDL–201A actions, in any forum, other than the United States District Court for the Eastern District of Pennsylvania."

Because of the transfer we are herewith ordering, we need not reach the issue of what impact, if any, this injunction has on the Panel's discretion regarding transfer of the Mississippi action under Section 1407.

New Orleans, Louisiana, and a number of the executive personnel for that division are located in Mobile, Alabama. Thus, Borden maintains, the Northern District of Mississippi, and not the Eastern District of Pennsylvania, is the more convenient forum for the parties and many of the witnesses. In addition, Borden argues, the judge before whom the Mississippi action presently is pending is presumably more familiar than Judge Cahn with the Mississippi state law claims, and those claims could be more easily and quickly resolved in the Northern District of Mississippi.

As an alternative to Borden's opposition to transfer of the Mississippi action, Borden argues that only Universal's third counterclaim is appropriate for inclusion in MDL–201A. Borden's contractual claims and Universal's state law counterclaims should be resolved in the District of Mississippi, Borden reiterates. See *supra.* Borden further maintains that the Panel may appropriately sever Universal's federal antitrust counterclaim from the state contract claims and the state antitrust counterclaims.

These arguments are not convincing. We recognize that the complaint and counterclaims in the Mississippi action raise certain individual factual and legal issues not presently involved in MDL–201A. Nevertheless, our careful review of the record before the Panel has lead us to conclude that the Mississippi action and the actions in MDL–201A share a great number of substantial factual questions concerning the alleged existence of a conspiracy to fix prices in the sugar industry. Inclusion of the Mississippi action in the centralized pretrial proceedings in MDL–201A is necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings concerning these common factual questions. *See, e. g., In re Uranium Industry Antitrust Litigation,* 458 F.Supp. 1223, 1229–31 (Jud. Pan.Mult.Lit.1978).

We reject Borden's alternative argument that only Universal's third counterclaim should be transferred to the Eastern District of Pennsylvania. Initially, we note that Universal's second counterclaim shares many questions of fact with the actions in MDL–201A, and therefore clearly belongs in the transferee district. Also, the class Universal seeks to represent in its second counterclaim is at least partially encompassed within the classes certified in MDL–201A. Transfer of this counterclaim thus will promote efficient treatment of the class action issues.

While the question of separation and remand of Universal's first counterclaim and Borden's contract claims is more knotty, on the basis of the record before us we have no reason to disbelieve Universal's contention that these claims are inextricably intertwined with the conspiracy allegations in, and therefore raise common questions of fact with, Universal's second and third counterclaims, as well as the MDL–201A actions. We were presented with a similar set of circumstances in *In re Midwest Milk Monopolization Litigation,* 386 F.Supp. 1401 (Jud.Pan.Mult.Lit.1975), where we held as follows:

> It may be, on further refinement of the issues and closer scrutiny by the transferee judge, that [the defendant's] defense and counterclaim are unrelated and that [the plaintiff's] claims can be remanded . . . . But we are unwilling, on the basis of the record before us, to make such a determination at this time.
>
> Although we are sensitive to the arguments advanced by plaintiff, we believe that they should properly be addressed to the transferee judge. He is in the best position to determine whether [the plaintiff's] claims are susceptible to immediate remand or whether they are inextricably related to [the defendant's] defense and counterclaim and the litigation in the [transferee district]. *See, e. g., In re Four Seasons Securities Litigation,* 361 F.Supp. 636, 638 (Jud.Pan.Mult.Lit.1973). Should the transferee judge deem an immediate remand of [the plaintiff's] claims appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule [11(c)(ii), R.P.J.P.M.L., 78 F.R.D. 561, 569 (1978).]

*Id.* at 1403. We find that reasoning persuasive here and adhere to it.

■ The fact that Borden's complaint and Universal's first two counterclaims are brought under state law serves as no impediment to Section 1407 transfer. "[It] is not peculiar for a federal district judge to be faced with applying law of a state other than the one wherein his or her district is located, and thus the presence of foreign state law in multidistrict litigation is of no particular consequence." *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation,* 438 F.Supp. 942, 943 (Jud.Pan.Mult.Lit.1977).

■ While attempts at voluntary cooperation among parties and their counsel concerning discovery efforts are always laudable, transfer of the Mississippi action to the Eastern District of Pennsylvania under Section 1407 will ensure the streamlining of . discovery and all other pretrial proceedings in that action, as well as in the litigation taken as a whole. *See In re Gas Meter Antitrust Litigation,* 464 F.Supp. 391, 393 (Jud.Pan.Mult.Lit.1979). This is particularly true in the context of the present litigation because, as we have already noted, Judge Cahn has become thoroughly familiar with the issues involved. *In re Sugar Industry Antitrust Litigation (East Coast),* 437 F.Supp. 1204, 1208 (Jud.Pan.Mult.Lit. 1977). We are fully confident that Judge Cahn will quickly and adroitly tailor the pretrial program already adopted in MDL–201A to accommodate any unique discovery or other pretrial matters that may be raised by the Mississippi action. *See In re The Upjohn Co. Antibiotic "Cleocin" Products Liability Litigation,* 450 F.Supp. 1168, 1170 (Jud.Pan.Mult.Lit.1978); *In re Equity Funding Corporation of America Securities Litigation,* 375 F.Supp. 1378, 1388, 1391 (Jud.Pan.Mult.Lit.1974) (concurring opinion). Thus, resolution of the Mississippi action will be simplified and expedited with

minimal, if any, deleterious effect on pretrial proceedings in the actions in MDL–201A. *In re Sugar Industry Antitrust Litigation (East Coast), supra,* 437 F.Supp. at 1207.

■ Finally, in response to Borden's argument that transfer of the Mississippi action to the Eastern District of Pennsylvania would not serve the convenience of the parties and many of their witnesses concerning, presumably, the contract claims in that action, we note that there normally is no necessity for the parties to participate in pretrial conferences held by the transferee court. Furthermore, the depositions of the parties and witnesses can be taken in the district in which they reside. *See* Fed.R. Civ.P. 26(c)(2), 45(d)(2). While there may be some inconveniences and additional expenses caused by the transfer of this action to the Eastern District of Pennsylvania, we believe that they will be greatly offset by the overall savings from and convenience of including this action in the coordinated or consolidated pretrial proceedings directed by Judge Cahn. *See In re Sugar Industry Antitrust Litigation, supra,* 427 F.Supp. at 1027.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action entitled *Borden, Inc. v. Universal Industries Corporation,* N.D. Mississippi, C.A. No. EC 78–204–K–O, be, and the same hereby is, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Edward N. Cahn for coordinated or consolidated pretrial proceedings with the actions already pending there in MDL–201A.